UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| Gardner Standard Kentaurus Holdco, LLC, *a Delaware limited liability company*, | Case No. 24-cv-02668 (DSD/ECW) |
| Plaintiff, | |
| v. | ORDER |
| Alex Eaton, *individually and as Trustee of the Alexander James Eaton Revocable Trust UTD November 20, 2017*, and the Alexander James Eaton Revocable Trust UTD November 17, 2017, | |
| Defendants. | |

This action is before the Court on Plaintiff Gardner Standard Kentaurus Holdco, LLC's ("Plaintiff") Motion for Leave to Amend Complaint to Add Claims for Promissory Fraud and Punitive Damages (Dkt. 61) ("Motion"). For the following reasons, the Motion is denied.

## I.   BACKGROUND

On July 9, 2024, Plaintiff initiated this action against Defendants Alex Eaton and the Alexander James Eaton Revocable Trust UTD November 17, 2017 (collectively, "Defendants") alleging breach of contract and securities fraud stemming from a capital investment Plaintiff made with Defendants. (Dkt. 1.) As alleged in the Complaint, Defendants solicited investments in a limited liability company formed by Eaton called Kentaurus Holdings, LLC ("Kentaurus") for the purpose of buying, operating, and

reselling multifamily housing units in Minnesota and, based on Eaton's representations, Plaintiff purchased 2,000 Class A Units of Kentaurus for $2 million.  (*Id.* ¶¶ 6-9.)

The Complaint further alleges that Defendants agreed in a Letter Agreement that they would take all steps necessary to redeem the Class A Units on or before March 31, 2023; that Eaton was required to purchase the Class A Units if he failed to cause Kentaurus to do so; and that if both those events did not occur, Plaintiff had the right to cause Eaton to sell Kentaurus and its assets in a commercially approved manner.  (*Id.* ¶¶ 14-17.)  The Complaint alleges that Kentaurus did not redeem the Class A Units by the promised date, Eaton failed to purchase those units, and Eaton did not sell Kentaurus' assets despite Plaintiff's instructions that he do so.  (*Id.* ¶¶ 18-21.)  The Complaint further alleges: "Indeed, Eaton has refused to sell the assets of Kentaurus and its subsidiaries **and has demonstrated that he never intended to pay Plaintiff the Redemption Price or sell the Properties by June 30, 2023**."  (*Id.* ¶ 22 (emphasis added).)

Defendants filed an Answer (Dkt. 32) and a Motion for Partial Dismissal (Dkt. 22) on October 1, 2024.  The Motion for Partial Dismissal sought dismissal of counts one, four, five, and six of the Complaint, where count one sought a declaratory judgment regarding the parties' rights and obligations under the Letter Agreement and counts four, five, and six were claims for securities fraud alleging, among other things, that Plaintiff relied on misrepresentations by Defendants when deciding to purchase the Class A Units.  (*See* Dkt. 22; *see also* Dkt. 1 ¶¶ 37-40, 54-69 (counts one, four, five, and six).)  Plaintiff's opposition to the Motion for Partial Dismissal argued that "Eaton misrepresented that he had all necessary authority to make the promises that he made, including the authority to

2

cause Kentaurus Holdings to pay the Redemption Price, the authority to sell Kentaurus Holdings' assets and use the proceeds to pay Plaintiff's first and ahead of all other investors, and the authority to turn control of Kentaurus Holdings over to Plaintiff"; Plaintiff had adequately pleaded its securities fraud counts because it alleged "that Eaton misrepresented his corporate authority, his present intentions, his financial condition, the financial condition of his trust, and the financial condition of Kentaurus Holdings"; and that Eaton's representations that Plaintiff had first priority over other investors, Defendants would not dilute or subordinate Plaintiff's position, and Kentaurus would have enough equity to redeem the Class A Units "were also fraudulent, as it is apparent that Defendants never had the intention of keeping them."  (Dkt. 42 at 3, 7-8.)[1]

On October 10, 2024, the Court issued an Order Setting Pretrial Conference (Dkt. 34) and on October 17, 2024, Defendants brought a Motion to Stay Discovery and Continue Rule 16 Conference ("Motion to Stay") pending the outcome of the Motion for Partial Dismissal (Dkt. 36), where the Motion for Partial Dismissal was set for argument on November 12, 2024 (Dkt. 23).  On October 31, 2024, the Court heard argument on the Motion to Stay, denied the Motion to Stay from the bench, and held the Rule 16 conference based on the Rule 26(f) Report filed by the parties.  (Dkts. 46, 47; *see also* Dkt. 44 (Rule 26(f) Report).)  The Rule 26(f) Report stated that the parties engaged in their Rule 26(f) meeting on October 16, 2025 and that "Plaintiffs have [sic] no intention to amend pleadings or add parties at this time, subject to further discovery."  (Dkt. 44 at

---

[1]   Unless otherwise noted, page number citations to materials filed on the docket are citations to the CM/ECF pagination.

3

1, 4.) Plaintiff proposed a deadline of December 31, 2024 to amend the pleadings or add parties. (*Id.* at 8.)

Later on October 31, 2024, the Court issued a Pretrial Scheduling Order. (Dkt. 48.) The Pretrial Scheduling Order set a November 18, 2024 deadline for initial disclosures, a January 31, 2025 deadline for motions to amend the pleadings or add parties, and a March 30, 2025 deadline for motions to amend the pleadings to add punitive damages. (*Id.* at 2, 4-5.) As to amending the pleadings or adding parties, the January 31, 2025 deadline was a month later than the December 31, 2024 deadline requested by Plaintiff in the Rule 26(f) Report. (*Compare* Dkt. 44 at 8, *with* Dkt. 48 at 4.) The Pretrial Scheduling Order also cautioned parties that:

> [S]imply because this schedule establishes a deadline for filing a particular nondispositive motion does not mean that a motion brought by that deadline will automatically be considered to have been timely filed if the relief sought by the motion is likely to impact the parties' ability to meet the other deadlines in this Order and if it appears that with the exercise of diligence, the motion could have been brought sooner.

(Dkt. 48 at 1-2.)

On December 16, 2024, Judge Doty granted the Motion for Partial Dismissal in full and dismissed counts one, four, five, and six. (Dkt. 51.) In dismissing the securities fraud claims, Judge Doty noted that Plaintiff "request[ed] the opportunity to replead its fraud claims," but denied the request because Plaintiff had "not moved to amend its complaint, provided a proposed amended complaint, or even indicated what changes it would make to comply with Rule 9(b)." (*Id.* at 5.)

4

On December 20, 2024, Defendants served responses to Plaintiff's written discovery. (Dkt. 82 at 4-6; *see* Dkt. 81 at 4.) Those responses included a "General Response" stating:

> As manager of Kentaurus Holdings, Eaton is given the sole authority to make decisions concerning the management of the Company, including the decision to sell assets. (Operating Agreement at §§ 6.1, 6.6(i).) As manager of Kentaurus Holdings, Eaton owes fiduciary duties to the Company and its members. This includes a duty of care requiring Eaton to act in the best interests of the Company and its members. This duty of care is not waivable. Eaton determined that selling assets of the Company at the time contemplated by the Letter Agreement—whether under his direction or under direction of Plaintiff—was not in the best interest of the Company or members. He was therefore forbidden from selling Company assets or granting Plaintiff the power to do so. That Eaton would be bound by fiduciary duties as manager of the Company was known by the parties to the Letter Agreement. The parties assumed that complying with the Letter Agreement would not cause Eaton to breach those fiduciary duties. This assumption turned out to be incorrect.

(Dkt. 82 at 5.)

On January 27, 2025, the Parties stipulated to an Amended Answer, which sought to plead additional affirmative defenses. (Dkt. 56 (Stipulation); Dkt. 58 (Amended Answer).) One of the stipulated-to affirmative defenses was: "Defendants did not breach the contract because it included an implied term that Defendant Alex Eaton, when acting in capacity of manager of Kentaurus Holdings, cannot carry out the terms of the Letter Agreement if doing so would cause a breach of his fiduciary duties." (Dkt. 56, Ex. A at 12 ¶ 14.) On the same day, the Court approved the Stipulation at a status conference, and Defendants filed their Amended Answer. (Dkt. 58; Dkt. 59 (minute entry).) Plaintiff raised no concerns regarding discovery, the schedule, or the deadline to amend the pleadings during the January 27, 2025 status conference.

Plaintiff deposed Eaton on February 18, 2025. (Dkt. 66 at 2.)

Plaintiff filed this Motion and supporting documents on March 28, 2025. (Dkts. 61-64, 66-67, 69-76.) The proposed Amended Complaint seeks to add a claim for promissory fraud alleging that "Defendants made a promise to perform with respect to the Letter Agreement" and "[a]t the time Defendants made the promise, they had no intention to perform." (Dkt. 73, Ex. 8 at 17 ¶¶ 70-71.) Plaintiff also proposed adding the following factual allegations:

> 18. Eaton had independent counsel review and revise the Letter Agreement, with the Parties eventually agreeing to and executing the December 9, 2020 version of the same.
>
> 19. Defendants understood that the Letter Agreement was intended to, and did give Plaintiff rights that were in addition to those of other Class A investors.
>
> 20. Unbeknownst to Plaintiff, however, Defendant never intended to comply with the terms of the Letter Agreement, despite his full understanding of the terms and implications of the same.
>
> 21. Defendants never intended to abide by the terms of the Letter Agreement that required sale of Kentaurus assets, despite the plain language of the Letter Agreement and their ability to cause Kentaurus to sell the assets.
>
> 22. In Eaton's own words, "just because the side agreement references the fact that they have a certain right doesn't mean that I have – actually believe that they could direct me to sell it."
>
> 23. Indeed, Defendants intended to abide by the terms of the Letter Agreement only if it did not violate alleged fiduciary duties owed to other investors. However, at the same time, Defendant believed, at the time of execution, that the Letter Agreement did violate those alleged fiduciary duties. Defendants therefore never intended to abide by the terms of the Letter Agreement.

6

24. Defendants intentionally and deliberately disregarded the rights of Plaintiff by agreeing to the Letter Agreement without any intention to actually follow through with the terms of the same.

(*Id.* at 5-6 ¶¶ 18-24.)

The proposed Amended Complaint also adds factual allegations relating to a transaction between Kentaurus and Bridgewater Bank and a claim for punitive damages under Minn. Stat. § 549.20 (2024). (*Id.* at 7-8 ¶¶ 39-43, 17.) Defendants filed their opposition and supporting papers on April 9, 2025. (Dkts. 81-82.) Plaintiff filed a reply on April 14, 2025. (Dkt. 83.)

Then, on May 19, 2025, the Parties filed a Stipulation to Amend the Scheduling Order. (Dkt. 84.) On May 21, 2025, the Court approved the Stipulation and extended the expert discovery deadline to August 27, 2025; the dispositive motion deadline to October 27, 2025; and the trial-ready date to February 27, 2026. (Dkt. 87.)

The Court heard argument on the Motion on May 21, 2025, and took the Motion under advisement as of that date. (Dkt. 86 (minute entry).) The Motion is now ready for decision.

## II. LEGAL STANDARD

Plaintiff's Motion is governed by Rules 15 and 16 of the Federal Rules of Civil Procedure.[2] Plaintiff seeks leave to amend under Rule 15(a)(2), which allows a party to

---

[2] The Court applies state substantive law and federal procedure law because it sits in diversity in this action. *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996) (citing *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938)). As this Court has previously explained, this Court looks to Federal Rule of Civil Procedure 15 instead of the Minnesota punitive damages pleading statute, Minn. Stat. § 549.191, when deciding a

7

amend "only with the opposing party's written consent or the court's leave." Fed. R. Civ. P. 15(a)(2). "The court should freely give leave when justice so requires." *Id.*

The determination as to whether to grant leave to amend is entrusted to the sound discretion of the trial court. *See, e.g.*, *Niagara of Wis. Paper Corp. v. Paper Indus. Union Mgmt. Pension Fund*, 800 F.2d 742, 749 (8th Cir. 1986). The Eighth Circuit has held that although amendment of a pleading "should be allowed liberally to ensure that a case is decided on its merits . . . there is no absolute right to amend." *Ferguson v. Cape Girardeau County*, 88 F.3d 647, 650-51 (8th Cir. 1996) (citing *Thompson-El v. Jones*, 876 F.2d 66, 67 (8th Cir. 1989); *Chesnut v. St. Louis County*, 656 F.2d 343, 349 (8th Cir. 1981)). Instead, denial of leave to amend may be justified by "undue delay, bad faith on the part of the moving party, futility of the amendment or unfair prejudice to the opposing party." *Sanders v. Clemco Indus.*, 823 F.2d 214, 216 (8th Cir. 1987) (citing *Foman v. Davis*, 371 U.S. 178, 182 (1962)); *see also Hillesheim v. Myron's Cards & Gifts, Inc.*, 897 F.3d 953, 955 (8th Cir. 2018) ("A district court's denial of leave to amend a complaint may be justified if the amendment would be futile." (citation modified)).

In addition to the requirements of Rule 15(a)(2), "[w]hen the district court has filed a Rule 16 pretrial scheduling order, it may properly require that good cause be shown for leave to file an amended pleading that is substantially out of time under that order." *In re Milk Prods. Antitrust Litig.*, 195 F.3d 430, 437-38 (8th Cir. 1999). Failing to require good cause would render scheduling orders without meaning. *See id.*

---

motion to amend to add punitive damages. *See Sleep No. Corp. v. Young*, No. 20-CV-1507 (NEB/ECW), 2021 WL 7210185, at *4 (D. Minn. Sept. 1, 2021).

8

Accordingly, "[o]nce the scheduling order's deadline passes, a plaintiff first must show good cause under Rule 16(b) for failure earlier to seek leave to amend before a court will consider whether amendment is proper under Rule 15(a)." *Sherman v. Winco Fireworks, Inc.*, 532 F.3d 709, 716 (8th Cir. 2008) (quoting *Leary v. Daeschner*, 349 F.3d 888, 909 (6th Cir. 2003)) (collecting cases). "When a party seeks to amend a pleading after the scheduling deadline for doing so, the application of Rule 16(b)'s good-cause standard is not optional." *Id.*

Scheduling orders pursuant to Rule 16(b)(1) "assure[] that at some point both the parties and the pleadings will be fixed . . . ." Fed. R. Civ. P. 16(b), advisory committee's note to 1983 amendment. Moreover, "Rule 16(b) assures that '[a] magistrate judge's scheduling order 'is not a frivolous piece of paper, idly entered, which can be cavalierly disregarded . . . without peril.'" *Archer Daniels Midland Co. v. Aon Risk Servs., Inc.*, 187 F.R.D. 578, 582 (D. Minn. 1999) (quoting *Gestetner Corp. v. Case Equip. Co.*, 108 F.R.D. 138, 141 (D. Me. 1985)). Under Rule 16(b), "[a] schedule may be modified only for good cause and with the judge's consent." Fed. R. Civ. P. 16(b)(4).

"The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements." *Sherman*, 532 F.3d at 716-17 (citing *Rahn v. Hawkins*, 464 F.3d 813, 822 (8th Cir. 2006)); *see also* Fed. R. Civ. P. 16(b), advisory committee's note to 1983 amendment ("[T]he court may modify the schedule on a showing of good cause if it cannot reasonably be met despite the diligence of the party seeking the extension."). "The good cause standard [of Rule 16(b)] is an exacting one, for it demands a demonstration that the existing schedule cannot be reasonably met despite the diligence

of the party seeking the extension." *Scheidecker v. Arvig Enters.*, 193 F.R.D. 630, 632 (D. Minn. 2000) (citation modified). In short,

> the question with respect to diligence is not merely a question of the number of weeks between when the information giving rise to the amendment was discovered and when the motion was filed; the question is whether the moving party has demonstrated that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension.

*Nagel v. United Food & Com. Workers Union, Loc. 653*, No. 18-CV-1053 (WMW/ECW), 2020 WL 13042211, at *6 (D. Minn. June 18, 2020) (citation modified); *Scheidecker*, 193 F.R.D. at 632 n.1 (stating Rule 16(b) focuses on "the diligence of the party seeking to modify a Scheduling Order, as opposed to the litany of unpersuasive excuses, inclusive of inadvertence and neglect, which commonly undergird an untimely Motion to Amend").

### III. DISCUSSION

The Court begins with whether Plaintiff has shown the requisite good cause to amend the Pretrial Scheduling Order and extend the deadline to amend the pleadings to render Plaintiff's proposed addition of the proposed promissory fraud claim timely. Plaintiff argues that it "learned of the basis of its claims for both Promissory Fraud [sic] after it obtained substantial discovery from Defendants and other third parties, which discovery was scheduled following the deadline to amend in the Scheduling Order." (Dkt. 62 at 18.) Plaintiff further argues that there is good cause because it filed the Motion "[o]nly slightly more than a month after Eaton's deposition, which provides most of the basis for the amendment." (*Id.*)

10

The Court rejects Plaintiff's good cause argument for several reasons. The proposed promissory fraud claim is based on allegations that Eaton never intended to comply with the terms of the Letter Agreement, Eaton only intended to comply if it did not violate his "alleged fiduciary duties," and Eaton believed when executing the Letter Agreement that complying with its terms would violate his fiduciary duties and therefore never intended to comply. (*See* Dkt. 73, Ex. 8 ¶¶ 18-24.) But Plaintiff argued in the Complaint that Eaton "never intended" to pay Plaintiff the redemption price or sell the properties by the agreed-upon deadline as required by the Letter Agreement. (*See* Dkt. 1 ¶ 22.) Similarly, Plaintiff argued in opposition to the Partial Motion to Dismiss in October 2024 that Eaton lacked the authority to take the actions agreed upon in the Letter Agreement and misrepresented "his present intentions" to do so. (Dkt. 42 at 3, 7-9.) Plaintiff also sought leave to amend its Complaint in the same brief because "any defects in the Complaint are capable of being cured through further details and allegations, as necessary." (*Id.* at 9.) But Plaintiff then chose not to bring a motion to amend after Judge Doty denied this request (without prejudice) for failing to comply with the Rules.

As to the basis for Eaton's alleged lack of intent to comply, Defendants' "fiduciary duties" defense does appear to have been developed later in the case, and it is this defense the proposed promissory fraud claim relies on. But Plaintiff was aware of this theory—and Defendants' argument that all parties to the Letter Agreement knew Eaton would be bound by those duties—when Defendants served their discovery responses on December 20, 2024. (Dkt. 82 at 5.) Indeed, on January 27, 2025, Plaintiff stipulated to an Amended Answer in which Defendants asserted this theory as an affirmative defense. (Dkt. 56, Ex.

11

A at 12 ¶ 14.) This means that by December 20, 2024, and certainly by January 27, 2025, Plaintiff knew Defendants' "fiduciary duties" theory and had most (if not all) of the information needed to seek leave to add the proposed promissory fraud claim. This undermines Plaintiff's claims of diligence and good cause. *See Andrews v. Fairview Health Servs.*, No. CV 21-1449 (ECT/ECW), 2022 WL 542427, at *7 (D. Minn. Feb. 23, 2022) ("Andrews' possession of much of the information underlying the proposed MWA claim weighs against a finding of good cause." (citing *Dolphin Kickboxing Co. v. FranChoice, Inc.*, No. 19-CV-1477 (MJD/ECW), 2020 WL 12849103, at *10 (D. Minn. Nov. 25, 2020) ("In sum, while some evidence may have been available after the January 18, 2020 cut-off for motions to amend, the key evidence on which Plaintiffs rely was available months before the motion to amend deadline expired. Consequently, the failure of Plaintiffs to move to amend for more than half a year (or to seek an extension of time to amend) demonstrates a lack of diligence incompatible with good cause under Rule 16.")); *Moldex Metric, Inc. v. 3M Co.*, No. CV 14-1821 (JNE/FLN), 2016 WL 845264, at *2 (D. Minn. Mar. 4, 2016) ("Although documents were produced and depositions took place after July 1, a substantial portion of the evidence on which Moldex Metric relied to support its second motion was available to it months before July 1. . . . Its failure to [amend before July 1] reveals a lack of diligence that is incompatible with a finding of good cause.").

Plaintiff also relies on Eaton's deposition testimony as showing his lack of intent to comply with the Letter Agreement's terms in its proposed promissory fraud claim. (Dkt. 62 at 9-11 (making arguments based on testimony); *see also* Dkt. 73, Ex. 8 at 6 ¶ 22

12

(quoting testimony).) That Eaton's deposition took place on February 18, 2025, after the deadline to seek leave to amend, is insufficient to establish good cause. First, Plaintiff has not explained why it could not depose Eaton before the January 31, 2025 deadline to amend the pleadings. Second, if Plaintiff could not depose Eaton before that deadline, Plaintiff has not explained why it did not seek an extension of time to amend the pleadings until after Eaton's deposition. Indeed, during the January 27, 2025 status conference during which the Court approved the Stipulation for Leave to File Amended Answer, Plaintiff raised no concerns over the deadline to amend the pleadings, discovery, or the schedule in general.

Also unexplained is why Plaintiff waited until over a month after Eaton's deposition to file this Motion. As discussed above, Plaintiff had most (if not all) of the information needed to seek leave to amend as of January 27, 2025, and the Motion relies on a small portion of Eaton's deposition testimony in the proposed Amended Complaint. This delay further demonstrates Plaintiff's lack of diligence. *See Nagel*, 2020 WL 13042211, at *6 (finding no diligence due to five-week delay when party had not shown schedule "could not 'be reasonably met despite' his diligence") (citing *Scheidecker*, 193 F.R.D. at 632).

In sum, Plaintiff's argument misunderstands the good cause inquiry with its focus on when discovery, including Eaton's deposition, "was scheduled." (*See* Dkt. 62 at 18.) The question is not when the discovery was scheduled; it is "whether the moving party has demonstrated that the existing schedule cannot reasonably be met despite the diligence of the party seeking the extension." *Nagel*, 2020 WL 13042211, at *6. Here,

13

Plaintiff has not demonstrated that it could not have met the January 31, 2025 deadline for motions to amend the pleadings had it been diligent. Plaintiff also has not explained why it did not seek an extension of the deadline to amend the pleadings given the timing of Eaton's deposition, including during the January 27, 2025 status conference when the Court approved the Stipulation for Leave to Amend Answer. For all these reasons, the Court finds Plaintiff has not shown the requisite good cause.

Plaintiff argues in the alternative that leave to amend should be granted because doing so will not prejudice Defendants. (Dkt. 62 at 18-20.) "The primary measure of good cause is the movant's diligence in attempting to meet the order's requirements," *Hartis v. Chicago Title Ins. Co.*, 694 F.3d 935, 948 (8th Cir. 2012) (citation modified), and courts generally do not consider prejudice if the movant has not been diligent in meeting the scheduling order's deadlines, including where the movant made only minimal efforts to satisfy its requirements, *see Bradford v. DANA Corp.*, 249 F.3d 807, 809 (8th Cir. 2001). Here, Plaintiff has not shown what, if any, attempts it made to meet the January 31, 2025 deadline to amend the pleadings. The Court therefore does not reach the question of prejudice and denies the Motion for lack of good cause insofar as it seeks leave to add the promissory fraud claim.[3]

The Court turns to the Motion insofar as it seeks leave to add punitive damages. Having denied leave to amend to add the promissory fraud claim, the only claims in this

---

[3] Plaintiff conceded at the May 21, 2025 hearing that the allegations relating to Bridgewater Bank (Dkt. 74, Ex. 8 at 7-8 ¶¶ 39-43) do not support the proposed promissory fraud claim, so the Court does not address them further.

14

action are for breach of contract. Under Minnesota law, "[p]unitive damages are not recoverable for breach of contract except in exceptional cases where the breach of contract constitutes or is accompanied by an independent, wilful tort." *Olson v. Rugloski*, 277 N.W.2d 385, 388 (Minn. 1979) (collecting cases). Plaintiff conceded at the May 21, 2025 hearing that its request to amend to add punitive damages must fail if the Court denies leave to amend to add the promissory fraud claim. Having denied leave to amend to add the promissory fraud claim, the Court denies leave to amend to add punitive damages. *See Coleman v. Lakeview Loan Servicing, LLC*, No. 19-CV-1168 (DWF/HB), 2020 WL 1922569, at *4 (D. Minn. Apr. 21, 2020) (denying leave to amend to add punitive damages as futile where punitive damages were not available for the existing FDCPA claim).

For these reasons, the Court denies the Motion. Because the Court denies the Motion under Rule 16 for lack of good cause, the Court does not reach the parties' futility arguments.

### IV.   ORDER

Based on the above, and on the files, records, and proceedings herein, **IT IS ORDERED** that: Plaintiff Gardner Standard Kentaurus Holdco, LLC's Motion for Leave to Amend Complaint to Add Claims for Promissory Fraud and Punitive Damages (Dkt. 61) is **DENIED**.

Dated: September 11, 2025            *s/Elizabeth Cowan Wright*
　　　　　　　　　　　　　　　　　　ELIZABETH COWAN WRIGHT
　　　　　　　　　　　　　　　　　　United States Magistrate Judge